UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60669-CIV-JORDAN/DUBÉ

CONSENT CASE

ANAND PERSAD,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## MEMORANDUM ORDER

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #20) and the Motion for Summary Judgment filed by the Defendant (D.E. #21) pursuant to the consent of the parties and an Order of Reference entered by the Honorable Adalberto Jordan, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff Anand Persad (hereinafter "Persad" or "Plaintiff").

### I. FACTS

Persad filed an application for disability insurance benefits on July 29, 2004. (D.E. #20, pg. 3).[1] This application, which asserted disability as of May 20, 2003, was denied initially and on reconsideration. (R. 29-30, 35-37). Following a hearing (R. 424-445), the ALJ issued a decision denying the request for benefits. (R. 12-21). A request for review filed with the Appeals Council was denied. (R. 5-7).

---

    1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

A hearing was held on March 27, 2006, in which the Plaintiff testified that he is from Trinidad and Tobago, and that he has two children ages 16 and 18. (R. 429). The Plaintiff also testified that he was diagnosed with type two diabetes eighteen years prior to the hearing. (R. 430). According to Persad, there is a history of diabetes in his family; he is Insulin dependent; and he takes his blood sugar three times a day. (R. 431).

Persad stated that as a result of the diabetes, he also has diabetic neuropathy. The Plaintiff described the neuropathy as a numbness and tingling pain. (R. 432). The Plaintiff testified that when he is unable to exercise, his blood sugar level goes up and as a result he must carefully monitor his diet. (R. 432-433). Persad also stated that he has an open wound on his ankle after he had surgery on his leg, and that he has retinopathy in his right eye, which has required five separate laser surgery procedures. Additionally, the Plaintiff stated that he has hypertension, a back injury and radiculopathy from his back down to his leg. (R. 433).

According to Persad, the shooting pain is in both legs but more on the right leg. The Plaintiff testified that he broke his leg as follows:

> A: I, I, I stepped with my right foot onto my left foot, but my, my shoe, it – one of these new style shoes with the wide front, and I only wore the shoes, like, over two times. And I was very uncomfortable with the shoes, but I, I, I still wore it. But while walking, I, I stepped on the edge of the shoe, and my ankle twisted, and then all the body weight went on the ankle, and when, when it broke at the ankle, I feel and then hit the knee – my – just below the knee. And then it, it broke below the knee also. So that, that's how that happened.

(R. 434).

The Plaintiff stated that he is currently unable to drive. He stated that in addition to his physical ailments, he is also being treated by a psychiatrist once a month who has prescribed him

2

with Zoloft. (R. 435). The Plaintiff testified that since his back surgery he is unable to return to work because his previous job as a warehouse manager required lifting, bending, stooping, standing, and sitting. Persad stated that he was the only employee at the Bank Atlantic warehouse, which is a storage facility for all the bank's supplies. (R. 436). The Plaintiff stated that he worked for the bank for a year and a half and that at the time he left he was making $12.00 per hour. Prior to working at the bank, the Plaintiff testified that he was working for the Check Cashing Store. (R. 437).

Additionally, the Plaintiff stated that his psychologist, Dr. Timothy Van Sickle, performed a DEC depression test and an MMPI, and gave him a GAF of 45. (R. 440-441). The Plaintiff's counsel stated as follows:

> ATTY: Well, this, this psychologist said that his DEC depression, depression inventory, his score of 43 on this instrument is associated with a severe level of clinically significant depression. He is most bothered by feelings of guilt and (INAUDIBLE), feelings of punishment, self-dislike, and decreased libido. Other symptoms he endorsed pertained to feelings of failure, indecisiveness, feeling worth, worthless, tired, lack of energy, and, and self-worth. And then the MMPI showed elevations on eight out of ten scores with a valid profile. And the diagnosis was post traumatic stress disorder, major depression, recurrent severe, psychological factors, anxiety, depression.

(R. 441).

The ALJ then asked what the post traumatic stress was caused by and the Plaintiff responded by stating that he injured his back while moving a safe. (R. 441-442). Persad stated that he also suffers from severe headaches due to high blood pressure. (R. 443). The Plaintiff testified that he is currently exploring the possibility of having an electronic device implanted in order to help reduce his constant pain. (R. 444).

In addition to the testimony presented at the hearing, medical records were submitted to the

ALJ. A review of the medical records and the specific issues raised by the Plaintiff in his Motion for Summary Judgment shows that the resolution of the issues does not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

On June 30, 2006, the ALJ issued a decision finding that the Plaintiff had the severe impairments of herniated disc L5-S1, status post laminectomy, insulin dependent diabetes mellitus, hypertension, and affective disorder, but that the impairments did not meet or equal the severity in the listing of impairments. (R. 16, 18). Further, the ALJ determined that the Plaintiff retained the residual functional capacity to perform a full range of sedentary work, and the mental residual functional capacity to perform work which does not involve remembering, understanding and carrying out complex or detailed work instructions, or work that involves more than routine interaction with co-workers or supervisors. (R. 18). The ALJ concluded that the Plaintiff could return to his past relevant work as a purchasing agent for a land development company and was thus, "not disabled" within the meaning of the regulations. (R. 21).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Regulations promulgated by the Commissioner establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920(a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the

ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520 (c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

In the instant case, the Plaintiff claims that the ALJ erred in failing to accord proper weight to the opinion of the Plaintiff's treating psychiatrist; improperly according great weight to the opinions of the non-examining state agency sources regarding the Plaintiff's mental impairments;

improperly determining the Plaintiff's physical residual functional capacity; and improperly determining that the Plaintiff could return to his past relevant work.

More specifically, the Plaintiff contends that the ALJ committed reversible error by failing to accord the proper weight to the opinion of Dr. Ely Pelta and by failing to discuss the treatment record of Dr. Timothy Van Sickle.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

This Court previously held that, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. Holley v. Charter, 931 F. Supp. 840, 849 (S.D. Fla. 1996). Further, a treating doctor's opinion is entitled to more weight than a consulting doctor's opinion. Wilson v. Heckler, 734 F. 2d 513, 519 (11th Cir. 1984).

The ALJ did not assign controlling weight to the opinion of Dr. Pelta and stated his reasons as follows:

> The undersigned does not afford this medical source statement controlling weight as the psychiatrist notes an assigned GAF of 55 indicative of moderate symptoms or moderate difficulty in social, occupational or school functioning (Exhibit 24F). Further, psychiatric treatment records reflect the claimant attempted to work "off the

> books" in early 2006 but the job did not work out – which activity
> would be inconsistent with the degree of limitations described.

(R. 20).

The Medical Impairment Questionnaire in question was completed by Dr. Pelta on March 7, 2006. (R. 398-408). Dr. Pelta stated that he saw the patient on a monthly basis for 20-30 minutes. He determined that the Plaintiff suffered from major depression and chronic pain, and assigned him with a GAF of 55. (R. 398). The assessment described the Plaintiff's symptoms as sleep disturbance; mood disturbance; social withdrawal or isolation; recurrent panic attacks; anhedonia or pervasive loss of interests; psychomotor agitation or retardation; feelings of guilt/worthlessness; suicidal ideation or attempts; decreased energy; generalized persistent anxiety; and hostility and irritability. (R. 398, 400). Dr. Pelta stated in the assessment that profound depression and severe anxiety supported the results of his mental status examination and added that the Plaintiff's impairments were consistent with the symptoms and functional limitations. (R. 400).

Additionally, Dr. Pelta opined that the Plaintiff's impairments would cause the Plaintiff to be absent from work more than four times a month. (R. 402). Dr. Pelta also reported that the Plaintiff's ability to remember work like procedures, and understand and remember very short and simple instructions were "fair." The Plaintiff's ability to carry out short and simple instructions; maintain attention and concentration for two hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and

length of rest periods; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; and be aware of normal hazards and take appropriate precautions were marked as "poor." "Fair" was defined as "the ability to function in this area is limited, but satisfactory." While "poor" was defined as the "ability to function in this area is seriously limited but not precluded." (R. 403-404).

The Plaintiff's mental abilities and aptitudes needed to do semiskilled and skilled work, and particular jobs were all found to be "poor." (R. 405-406). The Plaintiff had marked limitations in restriction of activities of daily living; and maintaining social functioning. The assessment was marked as "frequent" regarding Persad's deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere). (R. 406).

On August 20, 2004, the Plaintiff was given a psychological evaluation by Dr. Timothy Van Sickle. Dr. Van Sickle noted as follows:

> The patient completed the Beck Anxiety Inventory. He obtained a score of 16 on this instrument which is associated with a moderate level of clinically significant anxiety. He is most bothered by feelings of wobbliness in his legs. Moderate symptoms include paresthesias, body temperature dysregulation, lightheadedness, being unable to relax, and fears regarding the worst happening. Mild symptoms included tachycardia, feelings of terror, nervousness, shaking, fear of losing control, intestinal distress and body temperature dysregulation.
>
> The patient completed the Brief Battery for Health Improvement. There are 3 physical symptom scales that comprise this instrument. On the Somatic Complaint Scale, the patient obtained a patient normed T-score of 65 which is associated with a high level of somatic complaints. The score is also associated with the 90th percentile. His T-score on the pain complaint scale is a 60 which also falls in the high

> range. This score is associated with the 82nd percentile. The patient's score on the Functional Complaint Scale is a 74 which is associated with the extremely high range. This score is associated with the 98th percentile. All of the information related here pertains to a normative sample of rehabilitation in injury patients.

(R. 327). Further testing from Dr. Van Sickle revealed that the Plaintiff has severe sleep problems which are caused by pain. Dr. Van Sickle also reported that the Plaintiff was tearful during the interview, was significantly depressed and suffered from post-traumatic stress disorder. Dr. Van Sickle's diagnosis was post-traumatic stress disorder; major depression recurrent, severe; psychological factors (anxiety, depression, post-traumatic stress disorder, lack of pain management skills) related to a medical condition (chronic pain). Additionally, he assigned the Plaintiff a GAF of 45. The ALJ did briefly discuss Dr. Van Sickle's testing and diagnosis in his opinion; however, he did not explain what weight if any was given as is required in this jurisdiction.

It is the opinion of this Court that the ALJ's decision to reject the assessment of Dr. Pelta on the sole basis of the GAF of 55, and the failure to properly evaluate and assign weight to the records of Dr. Van Sickle was not supported by substantial evidence and that reversible error has occurred.

The Plaintiff's second point of contention is that the ALJ's Physical RFC is unexplained thus not supported by substantial evidence. The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997), citing, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis.... Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007).

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (4).

The ALJ stated as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry five pounds frequently and 10 pounds occasionally; sit up for six hours in a workday with normal breaks; stand/walk up to two hours in a workday; perform unlimited push/pull activities with the upper extremities and limited push/pull activities with the lower extremities; and occasionally climb, balance, stoop, crouch, crawl, and kneel. From a mental standpoint the claimant is capable of performing work that does not involve remembering, understanding, and carrying out complex or detailed work instructions, or work that involves more than a routine interaction with co-workers or supervisors.

(R. 18).

The regulations require that an ALJ review the entire record when determining a Plaintiff's residual functional capacity. A review of the ALJ's opinion reveals that prior to doing so the ALJ properly reached his residual functional capacity with regards to the Plaintiff's physical limitations. Namely, he reviewed the records of the Plaintiff's treating physicians, those of the consultative examiners and the testimony of the Plaintiff prior to reaching the aforementioned RFC. The Plaintiff contends that the ALJ was mistaken in stating that no treating source claimed that the claimant was unable to work and sited to numerous points in the record which would indicate to the contrary. (R. 270-271, 265-266, 255-256, 291-293, 219-220, 334-340). However, a review of these records reveals that it was not the opinions of those doctors that the Plaintiff was unable to work, rather, they

were reporting what the Plaintiff had told them upon examination. While the Court finds that the ALJ did not err in his evaluation of the Plaintiff's physical RFC, it does recognize that the mental portion needs to be redetermined after a new hearing is held.

As detailed above, this Court finds that the ALJ did commit error in the evaluation of the treating psychologist's opinion. Thus, this Court finds that a new hearing is required so that a proper determination can be made. The Court's decision directly impacts the Plaintiff's third point of contention regarding the Plaintiff's ability to perform his past relevant work, as such said contention is moot and the Court will not address same.

### III. CONCLUSION

Based on the foregoing, this Court finds that the decision by the ALJ is not supported by substantial evidence and that the correct legal standards were not applied. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1) The Motion for Summary Judgment filed by the Plaintiff (D.E. #20) is **GRANTED in part**.

(2) The Motion for Summary Judgment filed by the Defendant (D.E. #21) is **DENIED**.

(3) The decision of the Commissioner is **REVERSED** and this cause **REMANDED** for further proceedings consistent with this Order.

(4) Any pending motions are deemed **MOOT** and this case is hereby **CLOSED**.

**DONE AND ORDERED** this \_\_17\_\_ day of September, 2008.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE